*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

_____

Before
GASTON, STEWART, and BAKER
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Virginia S. MORATALLA**
Boatswain's Mate Second Class (E-5), U.S. Navy
Appellant

**No. 201900073**

Decided: 27 July 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Hayes C. Larsen (arraignment)
Warren A. Record (trial)

Sentence adjudged 25 October 2018 by a general court-martial convened at Naval Station Norfolk, Virginia, consisting of a military judge alone. Sentence approved by the convening authority: reduction to E--1, confinement for 48 months, forfeiture of $1,000.00 per month for 60 months, and a dishonorable discharge.

For Appellant:
*Lieutenant Clifton E. Morgan III, JAGC, USN*

For Appellee:
*Lieutenant Kevin G. Edwards II, JAGC, USN*
*Lieutenant Commander Timothy C. Ceder, JAGC, USN*

Judge BAKER delivered the opinion of the Court, in which Senior Judge GASTON and Judge STEWART joined.

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under NMCCA
Rule of Appellate Procedure 30.2.**

_____

BAKER, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with her pleas, of attempted larceny, larceny, drawing and uttering a check without sufficient funds, bank fraud, and dishonorably failing to pay a debt, in violation of Articles 80, 121, 123a, and 134 of the Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 880, 921, 923a, 934 (2012); 18 U.S.C § 1344 (2016).

In her single assignment of error, Appellant asserts the military judge abused his discretion in accepting her plea to bank fraud under 18 U.S.C. § 1344, charged as a clause three violation of Article 134, UCMJ.[1] We find no substantial basis in law or fact to question the providence of Appellant's plea and affirm the findings and sentence.

## I. BACKGROUND

Appellant participated in a variety of economic fraud schemes involving financial institutions and individuals. In October 2013 she entered into an agreement with Boatswain's Mate Second Class [BM2] Morris Whiskey[2] whereby BM2 Whiskey would represent to ABNB Federal Credit Union [ABNB] that he was taking out a car loan, for the purpose of purchasing Appellant's vehicle, a 2009 Kia Rio. Appellant needed funds for her house-

---

[1] The specification charged that Appellant did "knowingly execute or attempt to execute a scheme or artifice to defraud a financial institution, ABNB Federal Credit Union, or to obtain moneys, funds, credits, and assets owned by or under the custody and control of ABNB Federal Credit Union, by means of false or fraudulent pretenses, representations, or promises involving Boatswain's Mate Second Class [Morris Whiskey], U.S. Navy, and ABNB Federal Credit Union, in violation of 18 U.S.C. § 1344, a crime not capital."

[2] The names used in this opinion are pseudonyms.

flipping business, and BM2 Whiskey desired to invest funds in that business. Appellant believed she wasn't qualified for a loan and concluded that it would be easier to get a loan from ABNB if BM2 Whiskey represented that he was purchasing her vehicle.

BM2 Whiskey thus entered into an agreement with Appellant to secure funds for Appellant to use in her business by taking out a loan to "purchase" the Kia. He executed paperwork and received a car loan for $8,900 from ABNB and provided Appellant with these funds to invest in her business. At the time the loan was secured, the vehicle's registration and title were transferred into BM2 Whiskey's name, but Appellant retained physical possession and use of the vehicle. Months later, Appellant delivered possession of the vehicle to BM2 Whiskey.

## II. DISCUSSION

Appellant now argues that although she did not transfer possession of the vehicle contemporaneously with BM2 Whiskey's securing of the loan and provision of the funds to her, the vehicle belonged to him. She argues the loan from ABNB was indeed for the purchase of a car, and not to secure funding for her house-flipping business; therefore, no false representation was made to ABNB in order to obtain the loan. Thus, Appellant asserts the military judge abused his discretion by accepting her guilty plea to bank fraud under 18 U.S.C § 1344.

### A. Providence of Guilty Pleas

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). We review questions of law arising from the guilty plea de novo. *Id.* Before accepting a guilty plea, the military judge must ensure there is a factual basis for the charge; that the accused is pleading guilty voluntarily and with a full understanding of the factual basis of the charge; that the accused understands the effect of her plea; and that the accused understands she is waiving certain rights she would have at trial. Art. 45(a), UCMJ; *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969); Rule for Courts-Martial [R.C.M.] 910(e).

In accepting a guilty plea, a military judge abuses his discretion if he fails to obtain an adequate factual basis for the plea—but this factual basis is an area in which the military judge is afforded significant deference. *United States v. Simpson*, 77 M.J. 279, 282 (C.A.A.F. 2018) (citing *United States v. Nance*, 67 M.J. 362, 365 (C.A.A.F. 2009)). We apply the "substantial basis" test to determine whether a military judge abused his discretion: "whether

there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Inabinette*, 66 M.J. at 322. In analyzing a plea, we view the record through a lens most favorable to the Government, and any question of fact must "overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty." *United States v. Dawson*, 50 M.J. 599, 601 (N-M. Ct. Crim. App. 1999).

## B. Factual Basis for Appellant's Guilty Plea

For an accused to be found guilty of violating 18 U.S.C. § 1344, both clauses of the statute do *not* have to be met.[3] A person is guilty of a violation of the statute if she "knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a financial institution; *or* (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises . . . ."[4] Courts interpreting 18 U.S.C. § 1344 look to the common-law understanding of fraud, and "common-law fraud includes acts taken to conceal, create a false impression, mislead, or otherwise deceive . . . ." *United States v. Colton*, 231 F.3d 890, 898 (4th Cir. 2000) (citation and internal quotation marks omitted). To maintain a conviction under 18 U.S.C. § 1344, either a "misrepresentation or concealment of a material fact" must be proven. *United States v. Omer*, 395 F. 3d 1087, 1088 (9th Cir. 2005).[5]

The facts elicited during the military judge's providence inquiry are sufficient to support Appellant's plea of guilty to this offense. At the beginning of the providence inquiry, the military judge explained the elements of a violation of both clauses of 18 U.S.C. § 1344. To sustain a guilty plea, the military judge had to find that the following elements were satisfied:

---

[3] *See Loughrin v. United States*, 573 U.S. 351, 360 (2014) (finding no reason to doubt that in enacting § 1344, Congress "said what it meant and meant what it said" when it used the word "or," or that it meant "or" to be used in the usual sense).

[4] Emphasis added.

[5] The Supreme Court has determined that the language of § 1344(1), which requires proof of any 'scheme or artifice to defraud an institution,' incorporates the well-settled, common-law meaning of fraud and thus requires the prosecution to prove a misrepresentation or concealment of a material fact to support a conviction. *Neder v. United States*, 527 U.S. 1, 22-23 (1999).

One, that on or about 24 October 2013, [Appellant] knowingly executed or attempted to execute a scheme to defraud a financial institution or obtain any of the monies, funds, credits, or assets of the financial institution;

Two, that [Appellant] did so by means of a material false or fraudulent pretense(s), representation(s), or promise(s);

Three, that the scheme was intended to defraud a financial institution;

Four, that [Appellant] knowingly and willfully participated in this scheme with the intent to defraud; and,

Five, that Title 18, U.S. Code Section 1344 was in existence at the time of the Appellant's acts on the date of the offense.[6]

The military judge properly defined "false or fraudulent pretenses" as "any false statements or assertions that were either known to be untrue when made or were made with reckless indifference to their truth and that were made with the intent to defraud. The term includes actual direct false statements as well as half-truths and the knowing concealment of facts."[7]

Appellant stated that she understood the elements and associated definitions provided by the military judge and agreed that her conduct satisfied each element of both clauses.[8] Neither Appellant's military defense counsel nor her civilian defense counsel objected to the providence inquiry or stated their desire for any further inquiry into the specification.[9] Appellant later told the military judge that she did not have any questions about the meaning and effect of her pleas of guilty; that she still wanted to plead guilty; and that she was in fact guilty of the offenses.[10]

The military judge endeavored to ensure Appellant understood that the elements he provided at the outset covered both clauses of 18 U.S.C. § 1344. Citing *Loughrin v. United States*, 573 U.S. 351 (2014), he advised Appellant that whereas 18 U.S.C. § 1344 has two distinct theories of criminality, he had

---

[6] R. at 70-71.

[7] R. at 71.

[8] R. at 70-73, 136-44, 218-20.

[9] R. at 86, 217.

[10] R. at 218-20, 227-28.

initially "proceeded down the road of asking questions on both" clauses and was concerned that this had confused the inquiry.[11] The military judge's follow-up questions further clarified that Appellant had providently pled to both clauses of § 1344.[12] The military judge concluded that the conduct Appellant had pled guilty to "implicat[ed] both the first and second paragraphs of Section 1344."[13] He told Appellant, "you've acknowledged that you both intended to defraud the bank *and* that the scheme involved the presentation of false representations that led to the bank being defrauded, is that correct?"[14] Appellant responded in the affirmative.[15]

The scheme that Appellant admitted she knowingly entered into was to collaborate with BM2 Whiskey to create the false impression with ABNB that she was selling her vehicle to BM2 Whiskey in order to defraud ABNB. As Appellant relayed when the military judge asked her what was false about the agreement, she responded, "[b]ecause . . . the intention [was] not to purchase the car, but to use it for something else."[16] In the Stipulation of Fact, Appellant admitted:

> I entered this scheme involving [BM2 Whiskey] to obtain money for my house flipping business. It was part of the scheme for [BM2 Whiskey] to falsely represent to [ABNB] that the loan would be taken out for the purposes of paying for a 2009 Kia Rio. This representation was made in order to obtain moneys under the custody and control of [ABNB]. The auto loan was not taken out for the purposes of purchasing the vehi-

---

[11] R. at 136-142, 213-17.

[12] R. at 142-144, 213-17.

[13] R. at 143. In the Record, the term "paragraph" is used interchangeably with the term "clause."

[14] R. at 144 (italicization added). The military judge clarified the two clauses of 18 U.S.C. § 1344, stating that there are two ways that an individual could violate the bank fraud statute. "The First involves specific intent to defraud the bank, and the second does not require specific intent, it just requires the making of material false representations that lead to defrauding of the bank." R. at 143-44.

[15] R. at 143-44, 213-17.

[16] R. at 80.

cle, but was instead used to invest in my house flipping busi-
ness.[17]

Appellant admitted that she told BM2 Whiskey to lie to ABNB about pur-
chasing her vehicle to secure funding to invest in the business at a lower
interest rate than she would have otherwise been eligible for, had the true
facts been known.[18] She admitted that BM2 Whiskey entered into this
scheme with Appellant, whereby he would take out the loan to secure funds
to invest in Appellant's business.[19] Participation in the scheme by Appellant
included providing BM2 Whiskey "with the information on the 2009 Kia Rio
that he needed to secure the loan."[20] This was how Appellant and BM2
Whiskey fraudulently enticed ABNB to provide funds for them to invest in
her business.[21] As a result, she and BM2 Whiskey agreed that he would lie to
ABNB and tell them that he was buying the car, when they were actually
acquiring funding to invest in Appellant's business.[22]

As elicited by the military judge, Appellant was with BM2 Whiskey at the
time he applied for the loan, and elected to conceal the true nature of the
arrangement:

> MJ: How do you know that the representations made in
> the loan application were false?
>
> ACC: Because—Your Honor, because we ha[d] discussed the
> intentions of the purchase—of the loan as to the inten-
> tion of the purposes and to what it is used for.
>
> . . . .
>
> MJ: So you and he agreed that he would lie to ABNB
> Credit Union about the purpose of the loan, right?
>
> ACC: Yes, Your Honor.
>
> MJ: He would tell them it was to purchase a car?

---

[17] Pros. Ex. 1 ¶ 43.

[18] R. at 79-81.

[19] R. at 73, 79.

[20] Pros. Ex. 1 ¶ 44.

[21] *Id.* ¶ 43; R. at 79-80.

[22] R. at 79, 81.

ACC:   Yes, Your Honor.

MJ:   When [in] fact it was not to purchase a car?

ACC:   Yes, Your Honor.

MJ:   It was to invest in your business?

ACC:   Yes, Your Honor.

MJ:   Do you believe that that representation, that lie, was
material, in other words was it of a nature to influence
the person . . . to whom it was made?

ACC:   Yes, Your Honor.[23]

Thus, Appellant partnered with BM2 Whiskey to create a false impression as to the character of a material fact regarding the arrangement she had with him, in order to influence the financial institution to provide funds based upon that representation. Further, according to Appellant, BM2 Whiskey considered the transfer of funds from the loan, not to be for purchase of the vehicle, but for him to invest in Appellant's business.[24]

The vehicle, the collateral for the "car loan," remained in the possession of Appellant, not BM2 Whiskey.[25] Appellant did not turn over custody of the vehicle until a "[c]ouple of months" after BM2 Whiskey signed the paperwork and gave her the proceeds from the loan to Appellant to invest in her business.[26] When the military judge asked her, "[s]o you were still using the car, he was taking out a loan against the car, and you were getting the use of the money contrary to the promises made in the loan application," Appellant responded in the affirmative.[27] Thus, at the time that the paperwork was signed, and the funds were transferred, Appellant maintained control and possession of the vehicle. The concealment of Appellant's true reason for entering into the arrangement with BM2 Whiskey, for the partnership to use the 2009 Kia as collateral to secure funding to invest in Appellant's business, represents the concealment of a material fact and embodies a false represen-

---

[23] R. at 83-84.

[24] R. at 79-81. Pros. Ex. 1 at 43.

[25] R. at 79-81. Pros. Ex. 1 at 45.

[26] R. at 79-81.

[27] R. at 82.

tation made in order to both defraud a financial institution and obtain the funds of a financial institution, covering both clauses of 18 U.S.C. § 1344.

We find Appellant's statements during the providence inquiry were consistent with the stipulation of fact and her guilty pleas, demonstrate that she was convinced of her guilt, and establish the facts necessary to establish her guilt, including facts that corroborate the violation of both clauses of 18 U.S.C. § 1344. The military judge therefore did not abuse his discretion in accepting the plea.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred. UCMJ arts 59, 66.

However, we note that the court-martial order does not accurately reflect Appellant's plea and the resulting guilty finding for Specification 8 of Charge V, which excepted the following language from the Specification: "or to obtain monies, funds, credits, and assets owned by or under the custody and control of the Navy Federal Credit Union by means of false pretenses, representations, or promises involving Culinary Specialist Second Class [Melanie Waters], U.S. Navy, and Navy Federal Credit Union." While such inattention to detail is concerning, Appellant does not assert, and we do not find, any prejudice resulting from the court marital order's failure to reflect the exception of this language from the specification.[28] However, Appellant is entitled to have court-martial records that correctly reflect the content of her proceeding. *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998). Accordingly, we order correction of records in this case to accurately reflect Appellant's plea and the finding of guilty for that specification.

The findings and sentence as approved by the convening authority are **AFFIRMED**.

---

[28] The exception of this language removed one clause of 18 U.S.C. § 1344 from Appellant's plea and finding of guilty for the charged offense; however, the remaining language charges the other clause, to which she pled and was found guilty. As discussed *supra*, the law requires only one clause to be met under 18 U.S.C. § 1344 to sustain a conviction.

Senior Judge GASTON and Judge STEWART concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court